Merrimack, June 1, 1948. } No. 3737.

SCOTT S. MCINTIRE

*v.*

LOUIS BOROFSKY *d/b/a* The Army and Navy Store.

*Ernest R. D'Amours*, Attorney-General and *Gordon M. Tiffany*, Assistant Attorney-General (*Mr. Tiffany* orally), for the plaintiff.

*Thomas L. Marble* and *Morse & Grant* (*Mr. Grant* orally), for the defendant.

KENISON, J. This case presents the constitutionality of the Unfair Sales Act (R. L., *c.* 204) as applied to the agreed statement of facts quoted above. In preliminary summary the act makes it a misdemeanor for any retailer or wholesaler, "with intent, or effect, of injuring competitors or destroying competition," to advertise or sell merchandise at less than cost as defined in the act. The advertisement or sale at less than such cost "shall be *prima facie* evidence of a violation of this chapter." (*S.* 2). The statutory base for determin-

ing "cost to the retailer" is invoice cost or replacement cost, whichever is lower, less trade discounts to which is added freight and cartage charges and "a mark-up to cover in part the cost of doing business, which mark-up, in the absence of a proof of a lesser cost, shall be six percent of the total cost at the retail outlet." *S.* 1 (I). Numerous exceptions are made by the act (*s.* 3) so that it does not apply under stated conditions to isolated transactions, clearance sales, perishable merchandise, imperfect or damaged merchandise, final liquidation sales, sales to relief agencies and for charities, sales to state or municipal agencies, sales in good faith to meet legal competition or sales under court order. The act also provides that violations may be enjoined by the Superior Court. (*S.* 4).

The legislative history of the act begins in 1939 when an unsuccessful attempt was made to obtain an advisory opinion as to its constitutionality. *Opinion of the Justices*, 90 N. H. 567. At the next session the act was enacted into law (Laws 1941, *c.* 92) and was re-enacted in the Revised Laws without substantial change in its present form.

It is urged specifically that section 2 which prohibits the sale of merchandise below cost with the "effect of injuring competitors or destroying competition" is unconstitutional because it is unduly oppressive and contrary to accepted economic and social standards. *Loughran Co.* v. *Company*, 178 Md. 38. Similar phraseology is found in several of the Unfair Sales Act of the other states. I Callmann, Unfair Competition & Trade Marks (1945) *s.* 27, 2 (a). It is well settled in this jurisdiction that the Legislature may declare an act criminal without requiring that it be done with intent. *State* v. *Cornish*, 66 N. H. 329; *State* v. *Ryan*, 70 N. H. 196; *State* v. *Goonan*, 89 N. H. 528; *State* v. *Yosua*, 91 N. H. 181. In case of doubt the statute has frequently been construed to require intent (*Coutremarsh* v. *Metcalf*, 87 N. H. 127) but it is clear that the present statute by its express terms requires either the intent or the effect of injuring or destroying competition. The Legislature deemed it necessary to do more than condemn a state of mind and provided that sales below cost, except as provided in *s.* 3, are an economic evil whether they are intended or have the effect of injuring competition. Such a statute is valid. *McElhone* v. *Geror*, 207 Minn. 580; *Rust* v. *Griggs*, 172 Tenn. 565. Cf. *Corn Products Refining Co.* v. *Federal Trade Commission*, 324 U. S. 726; *State* v. *Tankar Gas. Inc.*, 250 Wis. 218.

That part of section 2 providing that advertisements or sales below cost are *prima facie* evidence of a violation of the Act is also attacked.

Since no conclusive presumption of guilt is created, Wigmore sees no constitutional problem. 4 Wig. Ev. (3d *ed.*) *s.* 1356. So long as there is a rational connection between the fact to be proved and the fact presumed, the statute is valid. *State* v. *Bozek*, 81 N. H. 277; 162 A. L. R. 495, 532. This is particularly so in this jurisdiction since *"prima facie* evidence, as here used, means evidence to be considered by the jury" (*State* v. *Lapointe*, 81 N. H. 227, 239), and in the absence of other evidence does not compel a verdict of guilty. *State* v. *Langley*, 92 N. H. 136. The constituent elements that make up "cost to the retailer" are peculiarly within the knowledge of the retailer as are the facts which bring him within the exceptions to the act in section 3. In view of the limited effect given to *prima facie* evidence in this jurisdiction, we cannot say that its application to unfair competition is unreasonable. Competition may be destroyed or injured by deceptive trade practices, discrimination, and unfair competition as well as by combinations and monopolies. They are closely interrelated and we have been informed recently that the legislative branch of the government has a wide latitude in establishing effective and even duplicating methods of preventing these asserted economic evils. See *Federal Trade Commission* v. *Morton Salt Company*, 68 S. Ct. 822; *Federal Trade Commission* v. *Cement Institute*, 333 U. S. 683.

One of the exceptions to the act is "where the price of merchandise is made in good faith to meet legal competition." *S.* 3 (h). If this required the retailer to examine his competitor's books to ascertain whether the competition was legal, it would be of doubtful validity. *Commonwealth* v. *Zasloff*, 338 Pa. 457, 465. All that is required of the retailer, however, is an endeavor "in good faith" to meet the legal prices of his competitor. *People* v. *Pay Less Drug Store*, 25 Cal. (2d) 108.

The term "cost to the retailer" the statute provides "shall mean *bona fide* costs." *S.* 1 (IV). This is proper. However, the rest of this paragraph states that in computing replacement cost, a cost calculation based on sales or purchases "which cannot be justified by existing market conditions within this state" is disallowed. The indefiniteness and uncertainty of this latter provision renders it invalid. *State* v. *Walgreen Drug Co.*, 57 Ariz. 308. The Maryland Act, formerly defective in part for this reason, was amended to remove this defect and upheld. *Blum* v. *Engelman*, (Md.) 57A (2d) 421. Since this invalid provision is separable, the remainder of the act "shall not be affected thereby." R. L., c. 204, *s.* 6.

While *s.* 1 (I) contains meticulous detail of the items in "cost to the

retailer," the defendants complain that there is no guide to determine "a lesser cost" than the mark-up of "six percent of the total cost at the retail outlet." S. 1, I (3). As the act now stands the doubt or ambiguity should be resolved in favor of the defendant. If this places a temporary obstacle to the effective enforcement of the act, it is a defect inherent in the statute and not one manufactured by the judiciary. The flexibility of cost accounting procedures makes the determination of cost a difficult one but the defendant is entitled to offset its benefits against its detriments. The determination of cost must not be in "bad faith" (*Dikeou* v. *Food Distributors Ass'n*, 107 Colo. 38) and it will suffice if it complies with the standard of "what business men generally mean [by cost] arrived at by a reasonable rule." *State* v. *Langley*, 53 Wyo. 332, 365.

In 1903, *Art.* 83 of the Constitution was revised. The Legislature was given the authority of the state to protect "free and fair competition in the trades and industries" against monopolies "or any other unfair means." Such is the avowed purpose of unfair sales statutes although there is much controversy whether they are adapted to accomplish that aim or in fact do so. There are some indications, at least in New England, that the statutes are used by the large sellers against the small sellers to prevent local price cutting rather than protecting the small seller against a concerted campaign of underselling by the larger units. *United States* v. *N. Y. Great A. & P. Tea Co.*, 67 F. Supp. 626; 57 Yale L. J. 391, 419 (1948). The vast amount of literature on this subject attests to its controversial nature both economic and legal. More than half of the states have similar legislation and, as a result of amendments, a majority of such statutes are considered constitutional. 118 A. L. R. 506; 128 A. L. R. 1126; *Blum* v. *Engelman*, (Md.) *supra*. The expediency and wisdom of such legislation is by the constitution "hereby granted to the general court" (*Art.* 83) and it is not for the judiciary to compete with the Legislature in matters of opinion "upon points of . . . expediency." *State* v. *Moore*, 91 N. H. 16, 21. Since the enactment of Unfair Sales Act is within the power of the Legislature granted to it by the Constitution, its wisdom, effectiveness and economic desirability is not a judicial question.

*Case discharged.*

All concurred.