Rockingham
No. 78-039

### THE STATE OF NEW HAMPSHIRE

v.

### LEONARD ADELSON

June 27, 1978

*Edward F. Smith* and *Andre J. Barbeau*, of Department of Employment Security (*Mr. Barbeau* orally), for the State.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Andrew D. Dunn* orally), for the defendant.

GRIMES, J.    The issues in this criminal prosecution for nonpayment of unemployment compensation contributions are whether the defendant was physically capable of performing the act required by statute, whether the defendant possessed the requisite criminal state of mind necessary for conviction, and whether the imposition of the penalty of imprisonment upon a corporate officer for the corporation's failure to pay these contributions would violate due process of law.

The defendant was charged with two separate violations of RSA 282:14 F (Supp. 1975), which provides in pertinent part: "[Falsity by Employer] Any employing unit . . . or any officer or agent of an employing unit . . . who knowingly fails or refuses to make any such [unemployment compensation] contribution . . . shall be guilty of a misdemeanor if a natural person. . . ." The case was tried in Portsmouth District Court, and the defendant was found guilty on both counts. Defendant appealed to the Rockingham County Superior Court. The Court (*Goode*, J.) found defendant guilty on both counts and sentenced defendant to thirty days in the Rockingham County House of Correction. Defendant's motions to set aside the verdict and to suspend the sentence were both denied. *Goode*, J., reserved and transferred defendant's exceptions. We reverse the convictions.

In August 1975 the defendant and several others established the AIS Corporation for the purpose of "engaging in the shoe business." The corporation acquired factories in Portsmouth and Newport, New Hampshire, and employed as many as two hundred people during some period of its existence. The defendant, who was the corporation's president and chief executive officer, contributed one hundred thousand dollars in start-up capital in return for his one-third interest. The defendant also contributed the proceeds from the sale of a racing horse and his personal automobile when the corporation first began to develop financial problems. The defendant also testified that he is personally responsible for some two hundred sixty thousand dollars that he borrowed for the corporation's benefit.

The corporation lost about three hundred thousand dollars from September 1975 to December 1975 because of unexpected costs associated with training employees. Eighty percent of these employees were unemployed stitchers referred to the corporation by the

department of employment security. The corporation continually had problems in meeting its payroll and was forced to secure loans to meet these responsibilities. In August 1976 the corporation finally closed the business.

The corporation, as an employing unit, was required to file reports with the department of employment security and to pay unemployment compensation contributions for each calendar quarter. These reports and contributions are due the last day of the month following the close of the calendar quarter. The corporation filed the necessary report and paid the contributions due for the quarter ending September 30, 1975. However, the corporation's quarterly report for the period ending December 31, 1975, which was due January 31, 1976, was not filed until March 26, 1976. The quarterly report for the period ending March 31, 1976, which was due April 30, 1976, was not filed until May 24, 1976. There was no payment of contributions with either report.

The State, in attempting to show that the defendant was physically capable of making the contributions, presented evidence that the corporation paid defendant's mother one hundred twenty-five dollars a week for an unspecified period of time, that the corporation leased a Mercedes-Benz automobile for five months at a monthly cost of four hundred three dollars, and that the corporation chartered airplanes for various purposes when the use of an automobile would have been less costly. The State also presented evidence that the corporation periodically paid the utilities, telephone, furniture rental, and apartment rental for defendant. The corporation did pay the weekly payroll, an amount much in excess of that which it owed in contributions. The defendant testified that the corporation made only one or two payments on the automobile, that the use of the airplanes was a business necessity, and that any amount paid for personal bills was more than offset by the corporation's failure to pay the defendant a salary at any time during its existence.

■ ■ The law requires the State to prove beyond a reasonable doubt every element of the crime charged. *State v. Linsky*, 117 N.H. 866, 872, 379 A.2d 813, 817 (1977); *accord, In re Winship*, 397 U.S. 358 (1970). In 1973, RSA 282:14 F was amended generally to conform the provisions to the new Criminal Code. Laws 1973, 528:178. One of the pertinent sections of the Criminal Code, RSA 626:1 I, provides: "A person is not guilty of an offense unless his criminal liability is based on conduct that includes a voluntary act or a voluntary omission to perform an act of which he is physically capable." The State therefore had the burden to prove beyond a reasonable

doubt that the defendant knowingly failed or refused to make an unemployment compensation contribution of which he was physically capable of making when the obligation became due.

The State must establish that at the time the contributions were due the corporation possessed sufficient funds to enable it to meet the statutory obligation, or that the lack of funds on such date was the result of a deliberate and intentional act without justification in view of all the financial circumstances of the corporation. *See United States v. Poll,* 521 F.2d 329, 333 (9th Cir. 1975). The defendant argues that the State did not present evidence to establish that the corporation possessed sufficient funds to make the contributions when the contributions were due.

On review this court will consider the evidence "in the light most favorable to the State with all reasonable inferences therefrom." *State v. Linsky,* 117 N.H. at 875, 379 A.2d at 818. The evidence read in a light most favorable to the State does not establish that the corporation had the ability to make the required contributions when they became due. The evidence regarding the payments to defendant's mother before the contributions became due is irrelevant on the question whether the corporation was able to make the payments when they became due. The State made no showing that these payments were improper especially in view of the fact that defendant's salary, to which he was entitled but which was not paid, would far exceed this amount. The evidence regarding the rental of the automobile, even assuming the corporation made five payments, does not prove that the corporation had the ability to make the contributions. There was also no evidence of the amount of money spent on charter airplane services or on providing defendant with a home. Moreover, the charter and car rental were a matter of business judgment, and it was not improper for the corporation to pay the reasonable expenses of its unpaid president. Although the corporation did pay its employees weekly, it was faced with a choice of paying the contributions or paying the corporation's employees, the nonpayment of either being a crime. RSA 275:52 (Supp. 1975). We cannot say that the corporation lacked funds to pay the contributions as a result of acts that were without justification in view of all the circumstances.

In view of the result reached on the first issue, we need not reach the others.

*Exceptions sustained.*

BROCK, J., did not sit; the others concurred.