Peterborough District Court
No. 78-046

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM A. THAYER

November 30, 1978

*Edward F. Smith* (*Robert L. Hermann, Jr.*, orally), for the New Hampshire Department of Employment Security.

*McLane, Graf, Greene, Raulerson & Middleton P.A.*, of Manchester (*Charles A. DeGrandpre* orally), for the defendant.

LAMPRON, C.J. This case follows the defendant's convictions under RSA 282:14 F for knowingly failing, as a corporate officer, to pay the unemployment compensation contributions, RSA 282:6, and late filing fees, and interest charges, RSA 282:12 A, B, for the Tops N' Bottoms Corporation. After trial the Peterborough District Court (*Brighton,* J.) found the defendant guilty on both complaints. On one complaint, the department recommended that the defendant be imprisoned for ninety days in the house of correction, the sentence to be suspended upon the defendant's making restitution of the entire amount of the unpaid tax, interest and penalties in the total amount of $1,669.91. With regard to the other, the department recommended a fine of $500, $300 to be suspended.

Sentencing was delayed pending the outcome of this court's decision on the following questions of law which were reserved and transferred:

> 1. Is it unconstitutional to impose criminal penalties, including imprisonment, for the failure of an officer or agent of an employer to pay unemployment compensation

contributions owed by the employer to the State under RSA ch. 282?

2. Can the District Court, following a finding of guilty, order a conditional discharge as set forth by RSA 651:1 VI, (sic) on condition that restitution or reparation of contributions due to the State of New Hampshire for an amount in excess of the $1,000 limit set out by RSA 651:2 VI (a) (sic) for a fine in a misdemeanor case?

We hold that restitution or reparation of contributions in any amount cannot be ordered as part of a conditional discharge under RSA 651:2 VI in this case.

"The purpose of the [New Hampshire Unemployment Compensation Act] is to ensure in limited measure against unemployment of individuals regularly attached to the labor market which is not occasioned with their consent or by their fault." *Wellman v. Riley*, 95 N.H. 507, 510, 67 A.2d 428, 429 (1949). An unemployed worker may apply for benefits to the unemployment compensation board, and, if found eligible, the money is drawn from the unemployment compensation fund. RSA 282:5; RSA 282:8. Under the Act each employer is obliged to make "contributions" to the New Hampshire Department of Employment Security. RSA 282:6 A. The department, in turn, places these contributions into the unemployment compensation fund. RSA 282:8. An employer, officer, or agent of an employing unit who knowingly fails or refuses to make this contribution is subject to criminal prosecution. RSA 282:14 F.

Defendant challenges the constitutionality of the misdemeanor penalty provision of the above section. In particular, he argues that imprisoning him for the failure to pay this contribution is tantamount to imprisoning him for nonpayment of a civil debt. Our task, therefore, is to decide whether the legislature has the power to declare nonpayment of this contribution a criminal offense punishable by imprisonment.

"The supreme legislative power, vested in the senate and the house of representatives by the second article of the constitution, includes the power of taxation. . . ." *Morrison v. Manchester*, 58 N.H. 538, 549 (1879). This power is nothing more than the power to assess members of the community for the public expense. N.H. CONST. pt. I, art. 12; *Morrison v. Manchester supra*. There is no dispute that relief of the unemployed is a public expense for which the legislature may expend tax revenues. *See Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 515–18 (1937).

■■ Although the employer's obligation has been labelled a "contribution," the name which the legislature may give to a money payment is not controlling. *See Carmichael v. Southern Coal & Coke Co.*, 301 U.S. at 508. This contribution is an involuntary exaction levied against an employer for the public expense. N.H. CONST., pt. I, art. 12; *Morrison v. Manchester*, 58 N.H. 538 (1879). It is a tax. The legislative power to levy this tax also embraces the authority to ensure the accumulation of sufficient revenues for the successful operation of the unemployment compensation system. This includes the power to penalize behavior that jeopardizes the financial soundness of that system. *See Spies v. United States*, 317 U.S. 492 (1942); *Helvering v. Mitchell*, 303 U.S. 391 (1938); *Ocean Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909). Such penalties have been enacted by the legislature. RSA 282:14 A, F.

■■ The legislature can make a knowing failure to pay this tax a crime and impose imprisonment for failure to comply with this law. N.H. CONST. pt. II, art. 5; *see State v. Farrow*, 118 N.H. 296, 305, 386 A.2d 808, 814 (1978). "Such provision does not impose imprisonment for debt, but for the wilful violation of the law. It becomes a criminal act because one who is able to do so wilfully and intentionally refuses to comply with the laws of his sovereign." *Cincinnati v. DeGolyer*, 25 Ohio St. 2d 101, 105, 267 N.E.2d 282, 284–85 (1971). *See generally* Annot., 48 A.L.R.3d 1324 (1973). Therefore we hold that the legislature had the power to enact RSA 282:14 F.

■ Defendant next argues that RSA 282:14 F does not require the State to show that defendant had the ability to pay the tax before he could be found guilty, and thereby imposes a cruel and unusual punishment. Defendant's brief was submitted before our decision in *State v. Adelson*, 118 N.H. 484, 389 A.2d 1382 (1978). *Adelson* requires that the State prove as an element of RSA 282:14 F that the person charged had the authority to make the payment for the corporation, and "that the corporation possessed sufficient funds to enable it to meet the statutory obligation." *Id.* at 487, 389 A.2d at 1384. We hold that RSA 282:14 F does not subject a violator to cruel and unusual punishment, because the ability to pay is a necessary element of the crime and must be proved by the State. *Id.*

After defendant's conviction, the State recommended a fine of $500 on one complaint, $300 to be suspended, and ninety days of imprisonment upon the second complaint, to be suspended upon restitution of the amount of the unpaid tax, interest, and penalties

in the amount of $1,669.91. The defendant excepts to restitution as a condition of his sentence.

The State claims that a sentence imposing restitution as a condition of defendant's probation is authorized by RSA ch. 651. In support, the State cites RSA 651:1 I, which reads: "The provisions of this chapter govern the sentencing for every offense, whether defined within or outside the code. . . .", and RSA 651:2 VI, which permits the court to impose restitution or reparation as a condition of one's sentence. The defendant concedes that the sentencing court has the authority to order a conditional release pursuant to RSA ch. 651, but argues that any condition imposed must be consistent with the scheme of enforcement set forth in the special penalty provisions of the Unemployment Compensation Act.

The language of RSA 651:1 I appears to be controlling; all criminal offenders are subject to RSA ch. 651 sentences, which include restitution. Nonetheless, "[t]he intention of the legislature is to be determined from the language of the statute as a whole and not from the use of a particular word or phrase." *State v. Burroughs*, 113 N.H. 21, 25, 300 A.2d 315, 317 (1973). It is necessary, therefore, to review the entire scheme of special enforcement penalties set forth in the Unemployment Compensation Act to determine whether a court may order a corporate official to pay the corporate tax as a condition of his sentence for violating RSA 282:14 F.

A failure to contribute to the unemployment fund, like a fraudulent receipt of unemployment benefits, threatens the very foundations of the unemployment compensation system. To ensure the vitality of the system, the legislature has enacted both civil and criminal remedies. RSA 282:12; RSA 282:14. The criminal sanctions are found in RSA 282:14, which lists offenses by both the claimant and the contributor. RSA 282:14 A makes it a misdemeanor for a "claimant" wilfully to make a false statement or representation or knowingly to fail to disclose a material fact to obtain any benefit or other payment under the unemployment compensation statute. In addition to the criminal charge, a "claimant" who wrongfully obtains unemployment benefits can be ordered to make restitution to the commissioner of the department of employment security. RSA 282:14 D. The provision under which the defendant was prosecuted, RSA 282:14 F, makes it a misdemeanor for any officer or agent of an employing unit to knowingly fail or refuse to make a contribution.

The legislature has provided the commissioner with a host of collection methods to ensure the soundness of the unemployment compensation fund. For example, the commissioner is authorized to seek

repayment of overpayments made to a claimant. RSA 282:14 E. To ensure collection of an employer's contributions, the commissioner, under the law in effect at time of this incident, had the authority to bring a civil action against the employer for the contributions due plus court costs and costs of collection. RSA 282:12 C. This provision was amended in 1977. The new law, which became effective on January 1, 1978, now gives the State lien-creditor status against an employer who does not pay the contributions. RSA 282:12 C. (Supp. 1977).

In addition the commissioner can assess interest on the unpaid contribution, RSA 282:12 A, and can charge the employer a late filing fee. RSA 282:12 B. RSA ch. 282 enumerates civil collection methods against an employer and restitution remedies against a claimant; it omits restitution or civil remedies against an officer or agent of a corporation for the payment of the corporate tax. In sum, restitution as a method of enforcement under the Unemployment Compensation Act has come to the legislature's attention; the legislature, however, has not seen fit to enact this remedy against a corporate officer or agent. *See Sigel v. Boston & Maine R.R.*, 107 N.H. 8, 23, 216 A.2d 794, 805 (1966).

Moreover, considering the purposes of restitution, we are convinced that the legislature's omission was deliberate. Restitution is a method of punishment; it repairs a breach of the law by requiring the perpetrators of a criminal act to make the victim whole. *State v. Sullivan*, 24 Ore. App. 99, 544 P.2d 616, 617 n.1 (1976); *People v. Becker*, 349 Mich. 476, 483, 84 N.W.2d 833, 836–37 (1957). *See generally* Schafer, *Restitution to Victims of Crime—An Old Correctional Aim Modernized*, 50 Minn. L. Rev. 243 (1965). Restitution has a logical and practical effect when applied to a person who fraudulently obtains unemployment benefits. RSA 282:14 D. The person is being required to return what does not rightfully belong to him. The purpose of restitution is illogical, however, when applied to a corporate official who is charged with failure to pay the corporation's tax obligations. RSA 282:14 F requires the corporate official to act, that is, to make the corporation pay a tax levied against the corporation. RSA ch. 282 does not levy the tax on the corporate official as a personal monetary obligation. The remedy of restitution, when applied to the corporate agent, makes the corporation's debts become the personal obligations of the corporate agent. In essence the agent would be forced to give back something that he never received. The benefit of nonpayment accrued to the corporation, and under the scheme of enforcement remedies provided in RSA ch. 282, the

department has sufficient civil means to proceed against the corporation. If the legislature wanted to hold a corporate agent civilly liable for such a debt it could easily have done so. *See* 26 U.S.C. §§ 6671, 6672 (1967).

■ ■ We hold that, pursuant to its power to tax, the legislature has the authority to impose criminal penalties for knowing failure to pay a "contribution." In addition to imposing criminal sanctions, the Unemployment Compensation Act arms the State with an elaborate system of civil remedies to ensure the upkeep of the unemployment compensation fund. A review of the entire enforcement scheme finds restitutive provisions against a claimant, and civil remedies against an employer, but no provisions requiring a corporate agent to be personally responsible for an employer's debts. Because defendant was prosecuted under the specific provisions of the Unemployment Compensation Act, it seems to us reasonable that the legislature intended sentencing to be done in accordance with the provisions of the Unemployment Compensation Act. A conditional sentence imposing restitution upon the defendant would accomplish an end not provided for in the Act. *See Commonwealth v. Buzak*, 197 Pa. Super. 514, 179 A.2d 248; *People v. Ruster*, 16 Cal. 3d 690, 548 P.2d 353, 129 Cal. Rptr. 153 (1976). Therefore, imposing restitution as a condition of the defendant's sentence is improper in this case.

We also remand for the district court to determine whether the State has met its burden of proof. *State v. Adelson*, 118 N.H. 484, 389 A.2d 1382 (1978).

*Remanded.*

GRIMES, J. and BROCK, J., did not sit; the others concurred.